UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
MIRANDA L.,

                          Plaintiff,        <u>DECISION AND ORDER</u>
                                              1:23-CV-00869-GRJ

       v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In August of 2019, Plaintiff Miranda L.[1] applied for Supplemental Security Income benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 10).

This case was referred to the undersigned on January 3, 2024. Presently pending is Plaintiff's Motion for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 14). For

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the following reasons, Plaintiff's motion is due to be granted and this case

is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on August 26, 2019, alleging disability

beginning May 1, 2019. (T at 102).[2]  Plaintiff's application was denied

initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").

A hearing was held on September 2, 2021, before ALJ Jason A.

Miller. (T at 36-64). Plaintiff appeared with an attorney and testified. (T at

42-56). The ALJ also received testimony from Susan Moyes, a vocational

expert. (T at 56-62).

### B.    ALJ's Decision

On September 27, 2021, the ALJ issued a decision denying the

application for benefits. (T at 13-35).  The ALJ found that Plaintiff had not

engaged in substantial gainful activity since August 26, 2019 (the date she

applied for benefits). (T at 18).  The ALJ concluded that Plaintiff's bipolar

disorder, generalized anxiety disorder, post-traumatic stress disorder

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

(PTSD), and substance use disorders were severe impairments as defined under the Social Security Act. (T at 19).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 20).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, but is limited to understanding, remembering, and carrying out short, simple instructions in a routine work setting. (T at 22).

The ALJ concluded that Plaintiff could not perform her past relevant work as a home health aide/companion. (T at 28).

However, considering Plaintiff's age (54 on the application date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 28-29).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between August 26, 2019 (the application date) and September 27, 2021 (the date of the ALJ's decision). (T at 29).

On December 7, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.   Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on February 2, 2023. (Docket No. 1).  On July 7, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 14,15).  The Commissioner interposed a brief in opposition to Plaintiff's request and in support of the denial of benefits on September 5, 2023. (Docket No. 16).

## II.  APPLICABLE LAW

### A.   Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See*

42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec*., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has
> a "severe impairment" which limits his or her mental or physical
> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner
> must ask whether, based solely on medical evidence, claimant
> has an impairment listed in Appendix 1 of the regulations. If the
> claimant has one of these enumerated impairments, the
> Commissioner will automatically consider him disabled, without
> considering vocational factors such as age, education, and
> work experience.
>
> 4. If the impairment is not "listed" in the regulations, the
> Commissioner then asks whether, despite the claimant's severe
> impairment, he or she has residual functional capacity to
> perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the
> Commissioner then determines whether there is other work
> which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two primary arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.  Second, she contends that the ALJ erred in discounting her credibility.  The Court will address both arguments in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.

The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more

relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, the record includes four (4) medical opinions regarding Plaintiff's ability to meet the mental demands of basic work activity.

Dr. Erica King-Toler performed a consultative psychiatric evaluation in December of 2019.  She diagnosed bipolar II disorder; generalized anxiety; post-traumatic stress; and substance abuse disorders. (T at 593).

Dr. King-Toler assessed mild limitation with respect to Plaintiff's ability to understand or apply simple directions and instructions; moderate limitation as to understanding or applying complex directions; moderate impairment with respect to using reason and judgment to make work-related decisions; mild impairment in social interaction; moderate limitation in her ability to sustain an ordinary routine and regular attendance at work; moderate impairment as to regulating emotions, controlling behavior, and maintaining well-being; and marked limitation with respect to being aware of hazards and taking appropriate precautions. (T at 593).

Dr. King-Toler opined that Plaintiff's substance abuse and psychiatric problems "may significantly interfere with [her] ability to function on a daily basis." (T at 593). She characterized Plaintiff's prognosis as "guarded." (T at 594).

In January of 2020, Dr. S. Bhutwala, a non-examining State Agency review physician, identified Plaintiff's depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders, as severe impairments. (T at 107). Dr. Bhutwala opined that Plaintiff had mild limitation in her ability to understand, remember, or apply information; mild impairment as to social interaction; moderate limitation with respect to concentration, persistence, and pace; and mild impairment in the ability to adapt or manage herself. (T at 108).

In March of 2020, Dr. L. Blackwell, another State Agency review physician, affirmed these findings on reconsideration. (T at 119-20).

In October of 2020, at the request of the Commissioner, Dr. Sharon Kahn, a non-examining medical expert, reviewed the record, answered interrogatories, and completed a medical statement of ability to do work-related activities (mental) form. (T at 1224-40).

Dr. Kahn assessed mild impairment in Plaintiff's ability to understand, remember, and carry out simple instructions; mild limitation as to making

judgments on simple work-related decisions; along with marked impairment with respect to understanding, remembering, and carrying out complex instructions and marked limitation in making judgments on complex work-related decisions. (T at 1225).

Dr. Kahn further opined that Plaintiff had marked impairment with respect to social interaction and her ability to respond appropriately to usual work situations and changes in a routine work setting. (T at 1226).

In her interrogatory responses, Dr. Kahn assessed marked impairment in Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (T at 1230). She opined that Plaintiff's impairments met or medically equaled the requirements of Listing 12.08 (Personality and impulse-control disorders). (T at 1231).

Dr. Kahn was concerned that Plaintiff's abstinence from substance abuse was, at the time of her review, too recent to separate the impact of her psychological problems from her substance abuse. (T at 1226).

The ALJ found the opinions of Dr. King-Toler and Dr. Kahn unpersuasive.  (T at 27-28).

With respect to Dr. King-Toler, the ALJ noted that Plaintiff may have been engaged in substance abuse at the time of the evaluation and found

that treatment record did not document symptoms consistent with marked or significant limitations. (T at 27).

Regarding Dr. Kahn, the ALJ concluded that the treatment record did not support marked limitations either during Plaintiff's substance abuse or prolonged period of sobriety. (T at 27-28).

The ALJ found the opinions of Dr. Bhutwala and Dr. Blackwell, the State Agency review physicians, persuasive as they were, in the ALJ's view, consistent with the overall course and progress of treatment. (T at 27).

The Court finds that the ALJ's decision cannot be sustained because he failed to adequately develop the record.

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326

F.Supp.2d 345, 353 (E.D.N.Y. 2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

In May of 2021, Dr. Dusan Pekovic, a psychiatrist, submitted a letter stating that he had been treating Plaintiff for five and a half years, noting a diagnosis of bipolar disorder unspecified, and describing Plaintiff as suffering from "ongoing psychiatric disability." (T at 1286).

Although the record contains Dr. Pekovic's treatment notes, it does not contain his assessment of Plaintiff's functional limitations.

Courts in the Southern District of New York have consistently recognized that "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Underpinning the heightening of the ALJ's duty is a recognition that the opinions of treating providers are particularly probative in claims involving mental health.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119,

122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

Further, "an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians." *Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)(citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

"Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity." *Skartados*, 2022 WL

409701, at *4 (citing *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) ("The medical records discuss her illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.")).

"It is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the … status of a patient." *Robins v. Astrue*, No. CV-10-3281 FB, 2011 WL 2446371, at *4 (E.D.N.Y. June 15, 2011)(quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y.1991)(emphasis original).

Here, two mental health professionals (Dr. King-Toler and Dr. Kahn) assessed greater limitation in Plaintiff's work-related functioning than the ALJ did.  In particular, Dr. Kahn, the medical expert retained by the Commissioner, reviewed the treatment record and opined that Plaintiff had disabling limitations (albeit with the caveat that she found it, at the time of her review, difficult to differentiate between limitations caused by psychiatric problems and substance abuse).  (T at 1224-40).

The ALJ discounted those assessments based largely on his interpretation of Dr. Pekovic's treatment notes. (T at 27-28).  It was error for the ALJ, a layperson, to reach such a conclusion without first seeking Dr. Pekovic's opinion. *See Piscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016)("Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified.").

Moreover, while Dr. Pekovic's description of Plaintiff as suffering from "ongoing psychiatric disability" is not, by itself, entitled to particular persuasive power,[3] it should have prompted the ALJ to reconsider his reading of the record and seek a functional assessment from the psychiatrist responsible for creating that record. *See generally Goble v. Colvin*, No. 15-CV-6302 CJS, 2016 WL 3179901, at *5 (W.D.N.Y. June 8, 2016)("[E]ven where a treating source expresses an opinion on an issue

---

[3] *See Guzman v. Astrue*, No. 09-CV-3928 (PKC), 2011 WL 666194, at *10 (S.D.N.Y. Feb. 4, 2011)(treating provider's statement "that the claimant is 'disabled' or 'unable to work' is not controlling," because such determinations are reserved for the Commissioner)(citing 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

reserved to the Commissioner, such as whether a claimant is 'disabled,' the ALJ cannot simply ignore or disregard the treating source's opinion.").

For this reason, remand is required.

### B.    Credibility

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any

other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified that anxiety and depression prevent her from working; some days she does not want to get out of bed or eat; a friend helps with household chores; and she struggles with concentration, memory, and hygiene.  (T at 43, 47, 49-50, 53-55).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 25).  In reaching this conclusion, the ALJ noted that the record was "characterized by generally normal mental status examination findings." (T at 25). Thus, although Plaintiff's subjective statements were supported by two medical

opinions (from Dr. King-Toler and Dr. Kahn), the ALJ found that Plaintiff could nevertheless perform a range of competitive, remunerative work that exists in significant numbers in the national economy.

For the reasons discussed above, the Court finds that the ALJ erred in reaching this conclusion without further development of the record.  *See Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

C.      *Remand*

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also*

*Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

The Court, therefore, directs a remand for further administrative proceedings and development of the record as outlined above.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED and this case is remanded for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: January 30, 2024

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge